#26695-aff in pt & rem-SLZ

**2014 S.D. 7**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                     Plaintiff and Appellee,

    v.

RICHARD W. GUTHMILLER,                     Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE THOMAS L. TRIMBLE
Judge

* * * *

MARTY J. JACKLEY
Attorney General

ANN F. MINES
Assistant Attorney General
Pierre, South Dakota                       Attorneys for plaintiff
                                           and appellee.


JOHN S. RUSCH of
Rensch Law, Prof. LLC
Rapid City, South Dakota                   Attorneys for defendant
                                           and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 14, 2014

OPINION FILED **02/12/14**

#26695

ZINTER, Justice

[¶1.]        A jury found Richard Guthmiller guilty of eight counts of making false or fraudulent sales tax returns.  On appeal, Guthmiller argues that the circuit court erred in denying his *Batson* challenges to three peremptory strikes exercised by the State.  He also argues that the court erred in denying his motion for judgment of acquittal.  We affirm the circuit court's denial of the motion for judgment of acquittal, but we remand for the court to undertake the required *Batson* analysis.

*Facts and Procedural History*

[¶2.]        In 1995, Richard Guthmiller moved to Rapid City where he worked for automotive body repair businesses.  In January 2008, he started his own automotive body repair business.  That same month, he applied for and received a sales tax license from the South Dakota Department of Revenue.  The Department cancelled his license in October 2008 because Guthmiller indicated on his sales tax return that he was "out of business."  In March 2009, the Department discovered that Guthmiller was still operating his business and informed him that he needed to reapply.  Guthmiller reapplied and was reissued a license.

[¶3.]        While operating his business during eight tax-reporting periods, Guthmiller filed sales tax returns.  He reported sales on each return, but he indicated that his sales were exempt.  A subsequent investigation led the Department to believe that Guthmiller was filing false or fraudulent returns. Guthmiller was indicted on eight counts of making false or fraudulent sales tax

-1-

returns in an attempt to defeat or evade the tax in violation of SDCL 10-45-27.3 and SDCL 10-45-48.1(1).[1]

[¶4.]      Guthmiller moved to dismiss the indictment.  He claimed that under the terms of the Fort Laramie Treaty of 1868, Rapid City was located in Indian Country.  Based on this claim and on his tribal membership, Guthmiller argued that South Dakota did not have authority to tax his Rapid City business.  The motion was denied.  After Guthmiller's unsuccessful petition for an intermediate appeal before this Court, his case proceeded to trial.

[¶5.]      During voir dire, Guthmiller's attorney asked the veniremembers for a "show of hands of anybody . . . who's partially even in the smallest amount Native American."  Although the record does not reflect the actual number of Native American veniremembers, the circuit court stated that "there [were] at least five identified."  No other questions were asked about race.

[¶6.]      Following voir dire, the State exercised its peremptory strikes.  Guthmiller objected to three of those strikes, arguing that they violated *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).  In response, the

---

1.      As is relevant here, SDCL 10-45-27.3 provides:

> Any person who holds a license issued pursuant to this chapter [retail sales and service tax] or who is a person whose receipts are subject to the tax imposed by this chapter shall, except as otherwise provided in this section, file a return, and pay any tax due, to the Department of Revenue on or before the twentieth day of the month following each monthly period.  The return shall be filed on forms prescribed and furnished by the department.

> SDCL 10-45-48.1(1) provides: "Any person who: (1) Makes any false or fraudulent return in attempting to defeat or evade the tax imposed by this chapter [retail sales and service tax] is guilty of a Class 6 felony[.]"

State tendered its reasons for the strikes. After brief remarks, the circuit court summarily denied Guthmiller's *Batson* challenges without giving a reason for its decision.

[¶7.] During its case-in-chief, the State called the Department employee who investigated Guthmiller. The investigator presented evidence indicating that Guthmiller performed taxable services during each tax-reporting period but failed to remit sales tax. Although Guthmiller ostensibly reported all his gross sales during each period, the investigator also presented evidence indicating that Guthmiller underreported his sales on all returns.

[¶8.] Another Department employee provided evidence relating to Guthmiller's knowledge of sales tax laws. The employee testified that she had explained to Guthmiller how sales tax applied to his business. She testified that she specifically told him "all [his] customers were subject to sales tax unless he was given an exemption certificate." According to her, Guthmiller seemed to understand her explanation. In addition to her conversations with Guthmiller, the employee testified that she also provided him with publications explaining how sales tax applied to his business.

[¶9.] At the close of the State's case-in-chief, Guthmiller moved for judgment of acquittal. He argued that the State had failed to prove that he had the specific intent to defeat or evade sales tax. The circuit court denied the motion.

[¶10.] Guthmiller then presented a defense that he lacked the specific intent to defeat or evade sales tax. He testified that he believed Rapid City was located in

Indian Country, and therefore, as a tribal member, his sales were exempt from state tax laws. The jury ultimately returned a guilty verdict on all counts.

*Decision*

[¶11.]     On appeal, Guthmiller raises two issues. He first argues that the circuit court's *Batson* analysis was incomplete, thus necessitating remand to allow the court to engage in the missing analysis.[2]

[¶12.]     Under *Batson* and its progeny, a three-step analysis is used to determine whether peremptory strikes were based on purposeful racial discrimination.

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, [i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.[3]

---

2.     We review the circuit court's application of the law under *Batson* de novo. *State v. Scott*, 2013 S.D. 31, ¶ 9 n.1, 829 N.W.2d 458, 461 n.1. We review a circuit court's findings on purposeful racial discrimination for clear error. *Id.*

3.     While the normal course in a *Batson* analysis is to take each step in order, the first step becomes moot if the circuit court rules on the ultimate issue of purposeful racial discrimination. *See Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 1866, 114 L. Ed. 2d 395 (1991) (plurality opinion) ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.").

#26695

*State v. Scott*, 2013 S.D. 31, ¶ 16, 829 N.W.2d 458, 465-66 (alteration in original)

(quoting *Johnson v. California*, 545 U.S. 162, 168, 125 S. Ct. 2410, 2416, 162 L. Ed.

2d 129 (2005)) (internal citations and quotation marks omitted).

[¶13.]     In this case, the following dialogue is the entire record of the *Batson*

challenge and the circuit court's analysis.

> **Defense Counsel:** Judge, at this time, the Defense moves to challenge the exclusion of all minorities from the jury pool. Prior to the selection process, there was at least three minorities that were physically identifiable, those being [S.A.], [J.H.] appeared to be black, and [D.B.], who appeared to be black, all of which have been struck.
>
> Ultimately, following the selection process, there appears not to be a single minority on the jury panel, despite the fact that at the beginning of the panel there were several individuals that indicated minority status.
>
> **Court:** [State].
>
> **State:** Okay. You had [D.B.]? I did not know that he was a minority. I will give you my reasons for all three, okay?
>
> [D.B.] and [S.A.] each had prior convictions. I had them marked before we came into the jury room [sic]. [S.A.] actually had both. He was convicted and had family members convicted. I didn't have access to Triple I's. I don't know what those crimes are, if egregious or something minor. That was a red flag for me, and so that's why I exercised.
>
> As for [J.H.], [J.H.] I guess concerned us. I didn't have anything marked on him. I was neutral coming in. During voir dire, I did not see him respond to any question. I didn't hear him say a word the entire morning. I didn't even see him shake his head or nod his head during -- while I was questioning.
>
> I'm not sure if he gestured or responded while [Defense Counsel] was up there. I did not see that he did. And there were even times, you know, where I asked for assurances, can you follow -- can you follow the law? Can you give each side a fair shake? And you could see the entire body of the jury shaking their head except for [S.A.] actually, and [J.H.], who were sitting next to each other, so it was kind of conspicuous. That's why I exercised on those three.

> **Court:** All right. Well, when the question was asked whether there [were] any Native Americans here, I saw at least five hands go up, and I'm not sure if there were more, but I counted five for sure. They were not up very long. They were not identified. I don't know whether or not defense or plaintiffs struck the people that were up. But I know there was at least five identified. And I guess there's two that we don't know anything about.
>
> I'm assuming Mr. Guthmiller is Native American. I don't know what his percentage is. I have no idea. It's not part of the record at this time.
>
> **Guthmiller:** Under Federal Guidelines, I'm recognized.
>
> **Court:** I'm just saying. That's my question. But I'm going to deny your motion.

[¶14.] The State contends that the circuit court resolved the *Batson* challenges under step one, finding that Guthmiller had not established a prima facie case. But during the *Batson* dialogue, the State never claimed that Guthmiller failed to establish his prima facie case. Instead, the State tacitly accepted Guthmiller's prima facie showing and proceeded to step two, explaining its reasons for striking the three minority veniremembers.

[¶15.] Thereafter, the court's questions suggested that it may have been considering whether Guthmiller satisfied his prima facie case. But the court did not indicate whether it found that Guthmiller failed to establish his prima facie case or whether he failed to carry his ultimate burden to prove purposeful racial discrimination. The court denied the challenges without analysis or explanation.

[¶16.] Under this record, we are unable to determine the circuit court's reason for denying the *Batson* challenges. We acknowledge that there are no "'magic words' the trial court must use in order to fulfill a *Batson* analysis." *State v. Ryan*, 2008 S.D. 94, ¶ 13, 757 N.W.2d 155, 159. For example, "a trial court

implicitly conducts [the required] analysis when it *accepts or rejects* the State's explanations for use of its peremptory challenges." *Id.* (emphasis added). However, the circuit court did not indicate whether it had accepted the State's reasons for its strikes. The court simply denied the *Batson* challenges without explanation. Absent the required *Batson* analysis, "limited remand is required to allow the circuit court to engage in the missing analysis." *Scott*, 2013 S.D. 31, ¶ 22, 829 N.W.2d at 467 (citations omitted).

[¶17.] On remand, the court should first determine whether Guthmiller "satisfie[d] the requirements of *Batson's* first step by producing evidence sufficient to permit the [court] to draw an inference that [racial] discrimination has occurred."[4] *Johnson*, 545 U.S. at 170, 125 S. Ct. at 2417. If the court determines that Guthmiller satisfied step one, it must then proceed to step two.

[¶18.] Under step two, the circuit court must determine whether the record shows that the State offered facially race-neutral justifications for its strikes. The bar to meet step two is not high. As the Supreme Court explained:

> The second step of [*Batson*] does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the

---

4. The circuit court questioned Guthmiller's race. "[A] criminal defendant may object to race-based exclusions of [veniremembers]" regardless of whether "the defendant and the excluded [veniremember] share the same race." *Honomichl v. Leapley*, 498 N.W.2d 636, 639 (S.D. 1993) (citing *Powers v. Ohio*, 499 U.S. 400, 402, 111 S. Ct. 1364, 1366, 113 L. Ed. 2d 411 (1991)). The races of the defendant and the struck veniremember are, however, relevant "circumstances for the trial court to consider in determining whether [a] defendant raised an inference that [the] State used its peremptory challenges for race-based reasons." *Id.* (citing *Powers*, 499 U.S. at 416, 111 S. Ct. at 1373-74).

> prosecutor's explanation, the reason offered will be deemed race neutral."

*Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (per curiam) (second alteration in original) (quoting *Hernandez*, 500 U.S. at 360, 111 S. Ct. at 1866 (plurality opinion)) (citing *Hernandez*, 500 U.S. at 374, 111 S. Ct. at 1874 (O'Connor, J., concurring in judgment)). If the circuit court determines that the State offered facially race-neutral justifications for its strikes, the court must proceed to step three.

[¶19.] It is within step three that the circuit court has "the duty to assess the veracity of the State's race-neutral" justifications for its strikes and to determine whether Guthmiller "met his burden of proving purposeful [racial] discrimination." *See Scott*, 2013 S.D. 31, ¶ 21, 829 N.W.2d at 466 (citing *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008)); *see also Johnson*, 545 U.S. at 171, 125 S. Ct. at 2418 ("It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful [racial] discrimination." (quoting *Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771)). In performing that analysis, the court "should not supinely accept 'any purportedly race-neutral reason that a skilled attorney can conjure up in response to a *Batson* challenge,' but must decide if the reason offered for the strike was 'merely a pretext designed to mask the improper consideration of race to exclude' a [veniremember]." *Scott*, 2013 S.D. 31, ¶ 19, 829 N.W.2d at 466 (quoting *Coombs v. Diguglielmo*, 616 F.3d 255, 261 n.5 (3d Cir. 2010)) (citing *Miller-El v. Dretke*, 545 U.S. 231, 251-52, 125 S. Ct. 2317, 2331-32, 162 L. Ed. 2d 196 (2005)).

[¶20.] We remand on the *Batson* issue to allow the circuit court to perform the required analysis on the existing record in accordance with this opinion. "If the court concludes that [Guthmiller] proved purposeful [racial] discrimination . . ., [Guthmiller's] conviction[s] should be vacated and a new trial ordered." *See id.* ¶ 23 (citation omitted). If Guthmiller failed to make his required showings, his challenges should be denied.

[¶21.] Guthmiller also appeals the denial of his motion for judgment of acquittal. We review the denial of a motion for judgment of acquittal de novo. *State v. Danielson*, 2012 S.D. 36, ¶ 8, 814 N.W.2d 401, 405 (citation omitted). Our task is to determine "whether the evidence was sufficient to sustain the conviction." *State v. Dowty*, 2013 S.D. 72, ¶ 15, 838 N.W.2d 820, 825 (quoting *State v. Roubideaux*, 2008 S.D. 81, ¶ 13, 755 N.W.2d 114, 118). To do so, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *State v. Plenty Horse*, 2007 S.D. 114, ¶ 5, 741 N.W.2d 763, 765).

[¶22.] Guthmiller argues that his motion for judgment of acquittal should have been granted because the State failed to prove that he had the specific intent necessary to commit the crimes. He contends that he held a good-faith belief that all his sales were exempt, and therefore, he did not have the specific intent to defeat or evade sales tax. He relies on *Cheek v. United States*, 498 U.S. 192, 111 S. Ct. 604, 112 L. Ed. 2d 617 (1991), to support his contention that good-faith beliefs negate specific intent. Guthmiller misconstrues *Cheek*.

[¶23.]    Guthmiller correctly notes that a good-faith belief, even if objectively unreasonable, "provide[s] an evidentiary basis upon which the jury could find that the necessary element of specific intent had not been proven beyond a reasonable doubt." *See id.* at 202. From this, however, Guthmiller incorrectly asserts that *Cheek* required the jury to find that his claimed good-faith belief negated his specific intent. *Cheek* does not demand that result.

[¶24.]    As Guthmiller acknowledges, his claimed belief that his sales were exempt from tax "did not make him *per se* immune from prosecution[.]" Instead, it was for the jury to decide whether his belief was held in good faith. *See id.* at 203 ("[B]elief [is] characteristically [a] question[] for the factfinder, in this case the jury.").

[¶25.]    In this case, the totality of the evidence, when viewed in a light most favorable to the State, was sufficient for a rational juror to disbelieve Guthmiller's claimed belief and find that he had the specific intent to defeat or evade sales tax. The State presented evidence showing that Guthmiller was aware of the legal duties imposed by South Dakota tax laws. A Department employee testified that she explained to Guthmiller how sales tax applied to his business. She told him that all his customers were subject to sales tax, unless the customer gave him an exemption certificate. The employee further testified that Guthmiller appeared to understand her sales-tax explanation. Moreover, Guthmiller was given publications that described how sales tax applied to his business.

[¶26.]    In addition to evidence of Guthmiller's knowledge of tax laws, the State presented evidence that a rational juror could find sufficient to demonstrate

that Guthmiller intended to defeat or evade sales tax. The State's evidence showed that Guthmiller falsely indicated to the Department that he was "out of business," which caused his license to be temporarily cancelled. Yet during the time his license was cancelled, he continued operating his business, and he did not reapply for his license until he was contacted by the Department. The State also presented evidence showing that Guthmiller not only failed to pay sales tax each reporting period, he also underreported his gross sales for each period; and in one case, he actually collected sales tax but did not remit it to the Department. Finally, there was evidence that Guthmiller misled the Department investigator regarding the existence of business records, bank accounts, and exemption certificates relating to the taxability of his sales.

[¶27.] Ultimately, it was for the jury to resolve the factual conflicts, weigh credibility, and sort out the truth. *See Dowty*, 2013 S.D. 72, ¶ 15, 838 N.W.2d at 825 ("[I]n reviewing the sufficiency of the evidence . . . [we] 'will not usurp the jury's function in resolving conflicts in the evidence, weighing credibility, and sorting out the truth.'" (citation omitted)). The evidence presented on Guthmiller's state of mind conflicted, but the jury resolved that conflict against Guthmiller. While Guthmiller contends that he held a good-faith belief that he was exempt from sales tax, it was within the jury's prerogative to disbelieve his contention and find that he had the specific intent to defeat or evade sales tax. Because the evidence was sufficient to sustain the convictions, we affirm the circuit court's denial of Guthmiller's motion for judgment of acquittal.

#26695

[¶28.]     Affirmed in part and remanded for further proceedings in conformance with this opinion.

[¶29.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.