#26664-a-DG

**2014 S.D. 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

CHRISTOPHER HATCHETT,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANINE KERN
Judge

* * * *

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                              and appellee.

JEREMIAH J. DAVIS
Pennington County Public
  Defender's Office
Rapid City, South Dakota                    Attorneys for defendant
                                              and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 14, 2014
OPINION FILED **03/12/14**

#26664

GILBERTSON, Chief Justice

[¶1.] Defendant Christopher Hatchett was convicted of first-degree burglary in violation of SDCL 22-32-1 and obstructing a law enforcement officer in violation of SDCL 22-11-6, after fleeing from a police officer into an occupied apartment and forcing the door closed against the officer. Hatchett appeals, alleging that obstructing law enforcement is not a sufficient predicate offense to support the charge of first-degree burglary. Hatchett also claims the trial court erred by allowing the State to exercise a peremptory strike motivated by race and that the trial court abused its discretion by not allowing Hatchett to admit into evidence at trial a letter written by Hatchett to the victims of the burglary. We affirm.

**Facts and Procedural History**

[¶2.] On April 3, 2012, at approximately 3:45 a.m., Rapid City police officer Fred Baxter responded to a call directing him to an incident at 402 Denver Street, apartment 103. The call stated that there was a male wearing a brown jacket and blue shirt kicking the apartment door and trying to light the door on fire. When Officer Baxter arrived at the apartment building, he saw Defendant Christopher Hatchett standing on the other side of an interior staircase doorway. Hatchett matched the description of the suspect. The two made eye contact through a window in the door and Hatchett immediately ran toward apartment 104.[1] Officer Baxter followed after Hatchett, but was unable to apprehend him before he disappeared inside apartment 104.

---

1.    Testimony indicates that apartment 104 was across the hall from apartment 103, where the emergency call originated. Later inspection revealed scorch marks on the door of apartment 103.

-1-

[¶3.] Brittnie and Brandon Schrier lived in apartment 104. As Brittnie opened her door to leave for work that morning, Hatchett—a complete stranger to Brittnie—was standing outside the door. Hatchett pushed his way inside the apartment. Brittnie screamed and ran to the other side of the room. The screaming awakened Brandon, who came to Brittnie's aid. As Brittnie yelled at Hatchett to get out, the Schriers observed Hatchett push against the door and bolt the deadlock. Brittnie then called 911 to report the intrusion. After bolting the lock, Hatchett entered a nearby closet and attempted to conceal himself with clothes, blankets, and other items.

[¶4.] From outside of apartment 104, Officer Baxter heard Brittnie screaming. Officer Baxter tried to follow Hatchett into the apartment, but could not force the door open against Hatchett's resistance. Once the deadbolt locked, Officer Baxter stepped back and kicked in the door. Inside the apartment, Officer Baxter saw Brittnie pointing to the entryway closet, where Officer Baxter found Hatchett lying on the floor. Officer Baxter placed Hatchett under arrest and escorted him out of the apartment. At the time of the arrest, Officer Baxter noted a strong odor of alcohol on Hatchett, but observed that Hatchett could talk clearly and could walk on his own.[2] Hatchett was charged with first-degree burglary in violation of SDCL 22-32-1 and obstructing a law enforcement officer in violation of SDCL 22-11-6.

[¶5.] A jury trial commenced February 8th, 2013. During jury selection, each side exercised its ten peremptory strikes. The State used one peremptory

---

2. Officer Baxter testified that Hatchett seemed intoxicated, but not to a level which required placement in detox.

strike to remove J.D.S., the only Native American member of the jury pool. During voir dire J.D.S. was asked, "Why do you think we have a law to prevent obstructing law enforcement?" He answered, "I don't know . . . I didn't really pay attention to the laws. The common intention ones, but just not—I never had to deal with that." In his jury questionnaire, J.D.S. also indicated that an immediate family member had been convicted of a crime other than a traffic offense. Hatchett raised a *Batson* challenge to the strike. The State explained that its strike was based on the jury questionnaire answer and because J.D.S. "stated that he doesn't pay attention to the laws or doesn't follow the laws except for the big ones[.]" The trial court accepted this race-neutral explanation, and J.D.S. was struck from the jury.

[¶6.]        While in jail awaiting trial, Hatchett wrote a letter to the Schriers. In the letter, Hatchett apologized for breaking into the apartment. He also mentioned his past criminal history and offered the Schriers tattoo work in exchange for the Schriers' refusal to testify against Hatchett.[3] Prior to trial, Hatchett filed a motion in limine to prevent the letter from being introduced into evidence. The State in response argued that the letter should be admissible, because it was highly relevant to the issue of guilt. After arguments by both sides, the trial court found that portions of the letter discussing Hatchett's prior convictions and imprisonment were too prejudicial. The trial court granted Hatchett's motion in part, approving only a

---

3.      Hatchett was separately convicted of witness tampering based on these
        actions.

redacted and typed version of the letter in which references to prior crimes and imprisonment were removed.

[¶7.]    At trial, the State did not offer the redacted letter into evidence. Hatchett sought to call Brittnie Schrier to the stand as a witness and offer the letter through her. However, the State objected to the evidence as hearsay. The trial court found that the letter did not fit any hearsay exception when offered by Hatchett and sustained the State's objection.

[¶8.]    At the close of the State's case, Hatchett moved for a judgment of acquittal, contending as a matter of law that obstructing law enforcement was an inappropriate predicate crime upon which to base the first-degree burglary charge. The motion was denied. Because the trial court denied admission of the letter as offered by Hatchett, the defense rested without calling any witnesses. The jury found Hatchett guilty on both charges. Hatchett was sentenced to seven years in the penitentiary for the first-degree burglary conviction, and 90 days in the county jail for obstructing law enforcement, concurrent with the burglary sentence.

[¶9.]    Hatchett appeals his conviction, raising three issues:

1.    Whether obstructing a police officer is a sufficient predicate offense to support a charge of first-degree burglary.

2.    Whether the State engaged in purposeful discrimination by striking the only Native American member of the jury pool.

3.    Whether the trial court erred in refusing to allow Hatchett to admit his own written statement into evidence.

## Analysis

[¶10.]    *1.    Whether obstructing a police officer is a sufficient predicate offense to support a charge of first-degree burglary.*

[¶11.] Hatchett first argues that the trial court erred in denying his motion for judgment of acquittal. He asserts that obstructing a police officer is not a sufficient predicate offense to support a charge of first-degree burglary under SDCL 22-32-1. We review issues of statutory interpretation and application as questions of law under the de novo standard of review. *State v. Miranda*, 2009 S.D. 105, ¶ 14, 776 N.W.2d 77, 81 (citation omitted). When engaging in statutory interpretation, "[w]e give words their plain meaning and effect, and read statutes as a whole, as well as enactments relating to the same subject." *AEG Processing Ctr. No. 58, Inc. v. S.D. Dep't of Revenue & Regulation*, 2013 S.D. 75, ¶ 17, 838 N.W.2d 843, 849 (citation omitted). "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and this Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* (citation omitted).

[¶12.] SDCL 22-32-1 provides:

> Any person who enters or remains in an occupied structure, with intent to commit any crime, unless the premises are, at the time, open to the public or the person is licensed or privileged to enter or remain, is guilty of first degree burglary if:
>
>> (1) The offender inflicts, or attempts or threatens to inflict, physical harm on another;
>> (2) The offender is armed with a dangerous weapon; or
>> (3) The offense is committed in the nighttime.
>
> First degree burglary is a Class 2 felony.

[¶13.] The language of SDCL 22-32-1 is clear and unambiguous that the intent to commit any crime is sufficient. In this case, Hatchett was found by the jury to have entered or remained in the apartment with the intent to obstruct a

police officer, a crime under SDCL 22-11-6.[4] The facts presented to the jury support this finding. Hatchett ran when he saw Officer Baxter, disappeared into apartment 104 to avoid apprehension, and used physical force and the door of the apartment to prevent Officer Baxter from apprehending him.

[¶14.] Hatchett argues that obstructing a police officer is a passive or reactive offense, and it would therefore lead to an absurd or unreasonable result to allow it to serve as a predicate offense for first-degree burglary. Hatchett asks this Court to hold that a purely reactive offense cannot serve as a sufficient predicate offense to charge first-degree burglary. However, when this Court interprets legislation, it "cannot add language that simply is not there." *Rowley v. S.D. Bd. of Pardons & Paroles*, 2013 S.D. 6, ¶ 12, 826 N.W.2d 360, 365 (citation omitted). A plain reading reveals the Legislature unambiguously intended to include all crimes as predicate offenses for first-degree burglary. The Legislature did not carve out any exception

---

4.    SDCL 22-11-6 provides:

> Except as provided in §§ 22-11-4 and 22-11-5, any person who, by using or threatening to use violence, force, or physical interference or obstacle, intentionally obstructs, impairs, or hinders the enforcement of the criminal laws or the preservation of the peace by a law enforcement officer or jailer acting under color of authority, or intentionally obstructs, impairs, or hinders the prevention, control, or abatement of fire by a firefighter acting under color of authority, or intentionally obstructs emergency management personnel acting under color of authority, is guilty of obstructing a law enforcement officer, firefighter, or emergency medical technician. Obstructing a law enforcement officer, jailer, firefighter, or emergency medical technician is a Class 1 misdemeanor.

in SDCL 22-32-1 for what Hatchett labels "reactive crimes" and we therefore will not read that exception into the statute.[5]

[¶15.] Hatchett cites to two opinions where this Court upheld burglary convictions on appeal, noting that in both cases the underlying crimes were volitional in nature, rather than reactive. *See State v. Jucht*, 2012 S.D. 66, 821 N.W.2d 629 (malicious intimidation or harassment); *State v. Burdick*, 2006 S.D. 23, 712 N.W.2d 5 (theft). However, these cases do not give any indication that obstructing law enforcement is or should be excluded from the broad term "any crime" under SDCL 22-32-1. Nor does Hatchett cite to any other case law which would lead us to believe that it was absurd or unreasonable for the Legislature to intend on punishing the entry with intent to commit the crime of obstructing a law enforcement officer. As is evident from the facts of this case, breaking into another's home with the intent to obstruct a law enforcement officer "creates elements of alarm and danger to persons who may be present in a place where they should be entitled to freedom from intrusion." *See State v. Wentz*, 68 P.3d 282, 289 n.1 (Wash. 2003) (Madsen, J., concurring) (citation omitted). Hatchett gives us no reason to conclude that the Legislature did not intend to protect against this harm.

[¶16.] The cases cited by Hatchett from other jurisdictions are similarly unpersuasive. Hatchett first cites *State v. Raines*, 706 N.E.2d 414 (Ohio Ct. App. 1997), in which an Ohio appellate court reversed a conviction for burglary based on

---

5. Hatchett gives no standard under which to evaluate whether a crime is "reactive or passive" or "volitional." Forcefully pushing a door closed against a police officer and then bolting the lock seems to take some degree of volition.

the predicate offense of resisting arrest. However, the burglary conviction in *Raines* was not reversed because of the reactive nature of the crime of resisting arrest, but instead on the fact that the defendant was not under arrest, nor was there probable cause to arrest the defendant. *Id.* at 432. Under Ohio law, the elements of the predicate offense of resisting arrest were therefore not satisfied. *See id.* In this case, Hatchett does not allege that the elements of the underlying offense were not met.

[¶17.] Hatchett also cites *State v. Devitt*, 218 P.3d 647 (Wash. Ct. App. 2009), which reversed a conviction based on similar facts as the case at bar. However, the court in *Devitt* relied on Washington's definition of residential burglary that required the predicate crime to be "a crime against a person or property," and the court found that Devitt had instead committed a crime against the government by obstructing an officer. *See id.* at 648-49. The scope of predicate crimes in Washington's burglary statute is clearly narrower than in South Dakota's statute, and thus leads to a different result. *See id.* at 648; SDCL 22-32-1.

[¶18.] Under the plain language of SDCL 22-32-1, obstructing law enforcement fits within the scope of "any crime" and is thus an appropriate predicate offense to support the charge of first-degree burglary. We therefore conclude that the trial court did not err in denying Hatchett's motion for judgment of acquittal.

[¶19.]   2.   *Whether the State engaged in purposeful discrimination by striking the only Native American member of the jury pool.*

[¶20.] Hatchett next alleges that the trial court erred in allowing the State to use a peremptory strike against potential juror J.D.S. He asserts the State

exercised the strike based on J.D.S.'s race, violating Hatchett's equal protection rights under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[¶21.]    We engage in a three-part test to determine whether a peremptory strike was improperly based on purposeful racial discrimination:

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination.

*State v. Guthmiller*, 2014 S.D. 7, ¶ 12, __ N.W.2d __ (quoting *State v. Scott*, 2013 S.D. 31, ¶ 16, 829 N.W.2d 458, 465-66). "The finding of intentional discrimination is a factual determination. Accordingly, we review an appeal alleging a *Batson* violation for the State's use of peremptory challenges for clear error." *State v. Ryan*, 2008 S.D. 94, ¶ 6, 757 N.W.2d 155, 158 (citations omitted).

[¶22.]    The trial court found in the first step of the analysis that Hatchett established a prima facie case of discrimination because Hatchett is a Native American and J.D.S. was the only Native American in the jury pool. The burden then shifted to the State to offer a permissible race-neutral explanation for striking the juror. *Scott*, 2013 S.D. 31, ¶ 16, 829 N.W.2d at 465 (citations omitted). Here, the State explained that it moved to strike J.D.S. because his juror questionnaire indicated that J.D.S. had family members or friends that have faced prior criminal convictions other than a traffic offense. The State also explained that during

questioning J.D.S. indicated that "he doesn't pay attention to the law or doesn't follow the laws except for the big ones[.]"

[¶23.] Presented with a prima facie case by Hatchett and a race-neutral explanation by the State, the trial court was then required to "assess the veracity of the State's race-neutral reasons and determine whether [Hatchett] met his burden of proving purposeful discrimination." *Id.* ¶ 21 (citation omitted). Under the third part of the *Batson* analysis, the "court's findings are afforded great deference, as the analysis depends highly on credibility." *Id.* ¶ 18 (citing *United States v. Maxwell,* 473 F.3d 868, 872 (8th Cir. 2007)). Under this step, the trial court determined that the State struck J.D.S. based on race-neutral reasons. Specifically, the court noted that J.D.S.'s jury questionnaire answer indicating family members being convicted of crimes and his answer about not paying attention to the laws were both acceptable race-neutral explanations.

[¶24.] Hatchett argues that these reasons were clearly pretextual excuses to remove the only Native American member of the venire, and the trial court's finding to the contrary was clearly erroneous. He asserts that the exclusion of J.D.S. was the product of a "surgical effort to pose a technical legal question to the only Native American member of the venire." Hatchett argues J.D.S. was singled out in this technical legal questioning. However, the record reflects otherwise. At least one other juror was asked about why there would be a law preventing the obstruction of a law enforcement officer. Other jurors were asked about the meaning of burglary and intent. Thus, J.D.S. does not appear to have been singled out in what Hatchett describes as technical legal questioning.

[¶25.]     Hatchett also contends that J.D.S.'s answers reflected at most a disinterest or lack of knowledge of the law and that the State's concerns over his answers are nothing more than a sham to hide discriminatory intent. However, J.D.S.'s answer went beyond lack of technical legal knowledge. He stated, "I didn't really pay attention to the laws. The common intention ones, but just not—I never had to deal with that." From a cold record, it appears that "not paying attention to the laws" could mean, as Hatchett contends, that J.D.S. simply acknowledged that he was not law trained. However, it could also show some degree of lack of respect for, or disregard of the law. The State claimed concern with the latter explanation, and the trial court accepted this explanation for the peremptory strike. This Court gives deference to the trial court's determination that the explanation was credible. *See State v. Roach*, 2012 S.D. 91, ¶ 34, 825 N.W.2d 258, 267-68.

[¶26.]     Hatchett also argues that there was no showing by the State that any non-Indians were removed from the venire because of family members or friends being convicted of crimes. However, under the final step of the *Batson* analysis, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Rice v. Collins*, 546 U.S. 333, 338, 126 S. Ct. 969, 974, 163 L. Ed. 2d 824 (2006) (citation omitted). *See also Ryan*, 2008 S.D. 94, ¶ 14, 757 N.W.2d at 159. Hatchett did not make this argument below when opposing the State's use of its peremptory strike, nor does he direct this Court to any place in the record where such a discrepancy exists. Hatchett therefore fails to prove purposeful discrimination based on this alleged discrepancy.

[¶27.]    Giving deference to the trial court's determinations of credibility, we conclude that Hatchett has not carried his burden of proving that the State's use of its peremptory strike against J.D.S. was racially motivated. Accordingly, we conclude that Hatchett's equal protection rights were not violated.

[¶28.]    3.    *Whether the trial court erred in refusing to allow Hatchett to admit his own written statement into evidence.*

[¶29.]    Last, Hatchett argues that the trial court erred in denying the admission of Hatchett's letter to the Schriers into evidence. "The trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion." *State v. Yuel*, 2013 S.D. 84, ¶ 8, 840 N.W.2d 680, 683 (citation omitted). To overturn an evidentiary ruling, any error demonstrated must be shown to be prejudicial error. *Id.* (citation omitted).

[¶30.]    On appeal, Hatchett asserts that the State should have been judicially estopped from arguing against the admission of the redacted version of Hatchett's letter to the Schriers, because the State had previously fought to allow the letter into evidence. Hatchett argues that by not allowing Hatchett to introduce the letter into evidence, he was denied the due process of law, because the actions of the State amounted to unfair surprise. Hatchett's arguments fail to convince this Court that the trial court abused its discretion and committed prejudicial error.

[¶31.]    First, although the court found the evidence was relevant, Hatchett offers no hearsay rule exception under which he should be allowed to offer the letter into evidence. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19-16-1(3) (Rule 801(c)). The term "statement"

includes both oral and written assertions. SDCL 19-16-1(1) (Rule 801(a)). Hearsay is generally not admissible. SDCL 19-16-4 (Rule 802).

[¶32.] Hatchett's letter to the Schriers, if offered by the State, would have been admissible as an admission of a party opponent. *See* SDCL 19-16-3 (Rule 801(d)(2)). However, the same letter offered by Hatchett did not fit into that exception. Instead, it fell squarely within the definition of inadmissible hearsay because it was being offered to prove the truth of the matter asserted.[6] The trial court explained this distinction, and correctly sustained the State's objection to the evidence as offered by Hatchett.

[¶33.] Second, judicial estoppel does not apply to this controversy. Judicial estoppel is applied only when four elements are present:

> (1) A party's inter-proceeding inconsistency must be about a matter of fact, not law.
> (2) The position the party took in the prior proceeding must have been a significant factor there.
> (3) The two positions must be absolutely irreconcilable.
> (4) The prior position must not have been taken as a result of mistake, inadvertence or fraud upon the party taking the position.

*State v. St. Cloud*, 465 N.W.2d 177, 180 (S.D. 1991). In this case, Hatchett fails to satisfy the first element, because he has not demonstrated any inconsistency by the State regarding a matter of fact. The only inconsistency alleged is in the State's trial strategy. The State initially wanted the entire letter admitted into evidence,

---

6.  *See United States v. White Horse*, 177 F. Supp. 2d 973, 977 (D.S.D. 2001) (stating that prior statements consistent with not guilty plea are hearsay); *United States v. Chard,* 115 F.3d 631, 635 (8th Cir. 1997) (defendant's attempt to introduce out-of-court exculpatory statements excluded as hearsay); *United States v. Waters*, 194 F.3d 926, 931 (8th Cir. 1999) (same).

but it ultimately lost that battle. Hatchett cites no authority that would prevent the State from adjusting its trial strategy after the unfavorable evidentiary ruling required significant redaction.[7]

[¶34.]        Hatchett cites *State v. Blem*, 2000 S.D. 69, 610 N.W.2d 803, to support his proposition that the State should be estopped from arguing for exclusion of the letter after fighting to have the letter deemed admissible. However, Hatchett's reliance on *Blem* is misplaced. In *Blem*, the court granted a motion in limine preventing the defense from offering any testimony or evidence of defendant's mental illness. *Id.* ¶ 61. The defense complied with the ruling, but the State then questioned the defendant about his mental illness during cross-examination. *Id.* ¶ 62. The Court concluded that "the State's violation of its motion in limine and its conduct during closing argument constitute[d] prejudicial error resulting in an unfair trial." *Id.* ¶ 69. The Court's decision in *Blem* was not based on a theory of estoppel, as advanced by Hatchett, but it was instead based on the State's direct violation of its own motion in limine prohibiting discussion of a certain issue at trial. *Id.* No such violation occurred in this case. Because the letter constituted hearsay not within any exception and judicial estoppel does not apply, the trial court did not abuse its discretion by preventing Hatchett from introducing this hearsay evidence to the jury.

---

7.        Hatchett argues generally that the State cannot "have it both ways"— fighting for inclusion then fighting for exclusion of the letter. Under this theory, however, we see no reason why Hatchett should instead be able to "have it both ways." It was Hatchett who first moved to exclude the letter from evidence.

## Conclusion

[¶35.]     Under the clear and unambiguous language of SDCL 22-32-1, the intent to commit "any crime" includes the intent to commit the crime of obstructing a police officer.  The trial court therefore did not err in denying Hatchett's motion for judgment of acquittal.  Furthermore, we conclude there was no clear error in the trial court's determination that the State struck juror J.D.S. for race-neutral reasons.  Finally, the trial court did not abuse its discretion by excluding Hatchett's letter to the Schriers as hearsay evidence.  For these reasons, we affirm.

[¶36.]     KONENKAMP, ZINTER, SEVERSON, and WILBUR, Justices, concur.