#30294-a-SRJ
**2024 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                           Plaintiff and Appellee,

    v.

KALEB NATHANIEL IRONHEART,               Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE LAWRENCE E. LONG
Retired Judge

* * * *

ALEX BRAUN
CHRISTOPHER MILES
KATHERYN DUNN of
Minnehaha County Public
   Defender's Office
Sioux Falls, South Dakota         Attorneys for defendant and
                                      appellant.

MARTY J. JACKLEY
Attorney General

JOHN M. STROHMAN
Assistant Attorney General
Pierre, South Dakota             Attorneys for plaintiff and
                                      appellee.

* * * *

ARGUED
MARCH 20, 2024
OPINION FILED **07/02/24**

JENSEN, Chief Justice

[¶1.] Kaleb Ironheart was charged with first-degree robbery and aggravated assault after taking a bottle of liquor from a grocery store. At trial, Ironheart moved for a judgment of acquittal on both counts arguing the evidence was insufficient to support either charge. The circuit court denied the motion. The jury found Ironheart guilty on both counts. Ironheart appeals the robbery conviction. He argues that the circuit court erred when it denied his motion for judgment of acquittal. We affirm.

## Factual and Procedural Background

[¶2.] On June 5, 2022, Francis Gergen, an assistant head manager for the wine and spirits department at a Sioux Falls grocery store, was helping an employee find a product when he noticed a person, later identified as Ironheart, moving quickly around the store. Gergen saw Ironheart grab a 1.75-liter bottle of Fireball Whiskey and walk towards the checkout counter. Instead of checking out, Ironheart turned to the exit, held up the bottle, and said something along the lines of "thanks, f*ckers" while running out the doors. The store's main exit had two sets of doors, and when the second set of doors did not open fast enough, Ironheart forced the doors open.

[¶3.] Gergen testified that he chased after Ironheart to retrieve the bottle, following six to eight feet behind him, and yelled, "Give it back." While running through the parking lot, Ironheart switched the bottle of Fireball from his right hand to his left. Ironheart reached his right hand into his pocket and pulled out a pocketknife. Ironheart stepped towards Gergen with the knife blade exposed. As

Ironheart stepped towards Gergen, he did not surrender the bottle of Fireball and said something along the lines of, "What are you gonna do? What are you gonna do?" At this point, Gergen stopped chasing Ironheart. Ironheart then moved towards an approaching vehicle, entered the rear passenger door of the car while still holding the bottle of Fireball, and rode away. Gergen took a picture of the license plate and called the police.

[¶4.]		When Officer Richard Smith and Officer Ben Erickson of the Sioux Falls Police Department arrived at the grocery store, Gergen provided them with details of the incident and showed them the surveillance video that was captured by the store's security camera. The case was assigned to Detective Steven Redmond of the Sioux Falls Police Department the following day. Detective Redmond discussed the incident with Gergen and viewed surveillance photographs of the suspect. Based on these photographs, Detective Redmond identified the suspect as Ironheart.

[¶5.]		On June 23, 2022, a Minnehaha County grand jury returned a two-count indictment charging Ironheart with robbery in the first degree, a Class 2 felony, in violation of SDCL 22-30-1, 22-30-3(1), 22-30-6, and 22-30-7 and aggravated assault by physical menace, a Class 3 felony, in violation of SDCL 22-18-1.1(5). Ironheart entered not guilty pleas to the charges. The State also filed a part II information alleging Ironheart had previously been convicted of three prior felonies.

[¶6.]		At trial, in addition to Gergen's testimony, the State presented the store's surveillance video of the incident. Additionally, the State presented

testimony from Detective Redmond, who identified Ironheart as the individual in the video. During Detective Redmond's testimony, the State presented a stipulation between the parties identifying Ironheart as the individual who was present at the store and who was depicted in the surveillance video.

[¶7.] After the State rested, Ironheart moved for a judgment of acquittal. He argued that the State had presented insufficient evidence to make a prima facie case as to robbery in count 1.[1] Ironheart asserted that the State had not presented evidence that Ironheart took personal property from Gergen's person or his immediate presence. Additionally, Ironheart argued that the State had not presented any evidence that he accomplished such taking because any use of force or fear of force was "strictly so that he could escape in the car." The State argued that it had presented sufficient evidence to make a prima facie case as to count 1. The State pointed to the testimony of Gergen that the bottle of Fireball was in Gergen's immediate presence because he was ten to twenty feet from Ironheart when he observed Ironheart take the bottle and run out of the store, and that Gergen was even closer to Ironheart when he turned and deployed the knife in an effort to retain the bottle. The State argued that this evidence was sufficient for the jury to find that Ironheart used force both to retain possession of the bottle and to overcome resistance to the taking of the bottle. The circuit court denied Ironheart's

---

1. Ironheart also moved for a judgment of acquittal as to aggravated assault in count 2. He argued that words alone are not enough to constitute physical menace. The State responded by arguing that the very act of removing the knife, exposing the blade, and holding it in the manner Ironheart did is sufficient to constitute physical menace. On appeal, Ironheart has not raised an issue concerning the court's denial of his motion on count 2.

motion, stating that "the record disclose[d] sufficient evidence, which if believed by the jury, [would] support convictions on both counts."

[¶8.] The jury found Ironheart guilty on both counts. Ironheart later admitted to the part II information. At sentencing, the circuit court imposed a ten-year sentence with credit for time served on the robbery conviction and a concurrent ten-year sentence with credit for time served on the aggravated assault conviction.

[¶9.] Ironheart appeals and raises the sole issue of whether there was sufficient evidence to support the robbery conviction.

## Standard of Review

[¶10.] This Court reviews "the denial of a motion for acquittal de novo." *State v. Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d 900, 904 (quoting *State v. Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d 327, 330). "Our task is to determine 'whether the evidence was sufficient to sustain the conviction.'" *Id.* (quoting *State v. Guthmiller*, 2014 S.D. 7, ¶ 21, 843 N.W.2d 364, 371). "To do so, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Guthmiller*, 2014 S.D. 7, ¶ 21, 843 N.W.2d at 371). "If the evidence, including circumstantial evidence and reasonable inferences drawn therefrom sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *Id.* (quoting *State v. Martin*, 2017 S.D. 65, ¶ 6, 903 N.W.2d 749, 751). "[T]his Court 'will not resolve conflicts in the evidence, assess the credibility of witnesses, or evaluate the weight of the evidence.'" *Traversie*, 2016 S.D. 19, ¶ 9, 877 N.W.2d at 330 (quoting *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83).

## Analysis

[¶11.]     Ironheart argues that the circuit court erred when it denied his motion for judgment of acquittal on the robbery charge.  He claims that no reasonable finder of fact could have found that the bottle of Fireball was taken by use of force as required by SDCL 22-30-1 because the theft was completed when he exited the store without the use of any force, and that he displayed his knife outside the store merely as a means of escape.  *See* SDCL 22-30-2 ("To constitute robbery, force or fear of force must be employed either to obtain or retain possession of the property or to prevent or overcome resistance to the taking.  If employed merely as a means of escape, it does not constitute robbery.").  Ironheart cites cases from other jurisdictions to support his claim that the evidence was insufficient to support a robbery conviction when force was not used until after the property was removed from the victim's person.[2]  Therefore, he maintains his conduct falls within the exception of SDCL 22-30-2.

---

2.     In *New Mexico v. Lewis*, the Court of Appeals of New Mexico held that a defendant could not be convicted of robbery where the only force occurred after the victim's money was removed and separated from his person without force.  867 P.2d 1231, 1233–34 (N.M. Ct. App. 1993).  In *Minnesota v. Townsend*, the Court of Appeals of Minnesota held that the defendant committed the offense of "simple robbery" by using force to overcome a person's resistance to, or to compel acquiescence, to the taking of property.  925 N.W.2d 280, 286 (Minn. Ct. App. 2019).  In *Kansas v. Bateson*, the Supreme Court of Kansas reversed a conviction for robbery because the robbery statute at issue required the force or violence to either precede or be contemporaneous with the taking of the property.  970 P.2d 1000, 1005 (Kan. 1998).  However, none of these decisions are particularly useful to our analysis because they are factually dissimilar and have different statutory elements for robbery which are not defined in the manner set forth in SDCL 22-30-2.  *See* N.M. Stat. Ann. § 30-16-2 (West 1978) ("Robbery consists of the theft of anything of value from the person of another or from the immediate

(continued . . .)

[¶12.]     The State responds that there is evidence from which a jury could find he applied force or fear of force "to retain possession of the property or to prevent or overcome resistance to the taking." *See* SDCL 22-30-2. The State argues that the jury must resolve conflicts in evidence, weigh the evidence, and determine witness credibility. Viewing the facts in light most favorable to the prosecution, the State argues it has made a prima facie case in which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The State emphasizes that SDCL 22-1-1 requires the penal statutes to be construed with a view to promote justice. *See State v. Long Soldier*, 2023 S.D. 37, ¶ 25, 994 N.W.2d 212, 221 (rejecting a narrow interpretation of South Dakota's robbery statute and noting that it would be unjust "[t]o reward defendants who . . . incapacitat[e] a victim in the pursuit of the victim's . . . property and allow them to avoid culpability for robbery. . . .").

[¶13.]     SDCL 22-30-1 defines robbery as "the intentional taking of personal property, regardless of value, in the possession of another from the other's person or immediate presence, and against the other's will, accomplished by means of force or fear of force[.]" SDCL 22-30-2 requires that the force or fear of force "must be

---

(. . . continued)
control of another, by use or threatened use of force or violence."); Minn. Stat. § 609.24 (1963) ("Whoever, having knowledge of not being entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome the person's resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery . . . ."); Kan. Stat. Ann. § 21-5420 (West 2010) ("Robbery is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person.").

employed either to obtain or retain possession of the property or to prevent or overcome resistance to the taking. If employed merely as a means of escape, it does not constitute robbery." Therefore, a robbery occurs under SDCL 22-30-1, not only when the force or fear of force is used to take the property, but also if the force or fear of force is used to "retain possession of the property or to prevent or overcome resistance to the taking."

[¶14.] Ironheart's claim that the theft was completed without any force or fear of force as soon as he exited the grocery store is contrary to the evidence and the plain language of SDCL 22-30-2. Although Ironheart did not use any force to initially take the bottle of Fireball, Gergen testified that as he began chasing Ironheart into the parking lot and demanding that he return the bottle, Ironheart, while still holding the bottle of Fireball, pulled out a knife and stepped towards Gergen while saying, "What are you gonna do? What are you gonna do?" Gergen testified that once he saw the knife, he stopped and began backing up. Ironheart then jumped into the passenger side of an approaching vehicle with the stolen alcohol and drove away. A reasonable jury could find from this evidence that Ironheart, in order to complete the theft, deployed the knife to retain possession of the bottle despite Gergen's demand that he give it back, or that he deployed the knife in order to prevent Gergen's resistance to the taking.

[¶15.] Nonetheless, Ironheart asserts that the evidence was also insufficient for robbery based upon the last sentence of SDCL 22-30-2 which provides that if force or fear of force is "employed *merely* as a means of escape, it does not constitute robbery." (Emphasis added.) He argued to the circuit court that any use of force by

Ironheart in the parking lot was "*strictly* so that he could escape in the car." (Emphasis added). However, the evidence was sufficient to support a finding by the jury that Ironheart threatened Gergen with the knife in order to overcome Gergen's demands to return the alcohol. And in any event, the jury could have certainly rejected Ironheart's claim that the knife was used "merely as a means of escape."[3]

[¶16.] "[T]he jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence." *Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d at 83 (quoting *State v. Jensen*, 2007 S.D. 76, ¶ 7, 737 N.W.2d 285, 288). So long as "the evidence, including circumstantial evidence and reasonable inferences drawn therefrom

---

3.  Ironheart has not challenged the statute or claimed that it was ambiguous in his motion for judgment of acquittal to the circuit court. Nor did he make such an argument until his reply brief to this Court, suggesting that the statute is ambiguous, and the rule of lenity should be applied. "A party may not raise an issue for the first time on appeal, especially in a reply brief when the other party does not have the opportunity to answer." *Ellingson v. Ammann*, 2013 S.D. 32, ¶ 10, 830 N.W.2d 99, 102 (quoting *Agee v. Agee*, 1996 S.D. 85, ¶ 21 n.4, 551 N.W.2d 804, 807 n.4). "Failing to raise an issue prior to appeal effectively serves as a waiver." *Id.* (citing *State v. Engesser*, 2003 S.D. 47, ¶ 32, 661 N.W.2d 739, 750). Moreover, Ironheart has not shown a basis to apply the rule of lenity. "'[G]rievous ambiguity or uncertainty' necessary to invoke lenity requires more than '[t]he simple existence of some statutory ambiguity' because 'most statutes are ambiguous to some degree.'" *U.S. v. Smith*, 756 F.3d 1070, 1075 (8th Cir. 2014) (alterations in original) (quoting *Muscarello v. U.S.*, 524 U.S. 125, 138, 118 S. Ct. 1911, 1919, 141 L. Ed. 2d 111 (1998)); *See also U.S. v. Castleman*, 572 U.S. 157, 172–73, 134 S. Ct. 1405, 1416, 188 L. Ed. 2d 426 (2014) (quoting *Barber v. Thomas,* 560 U.S. 474, 488, 130 S. Ct. 2499, 2508, 177 L. Ed. 2d 1 (2010)) ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended."). The statute clearly defines when force or fear of force is sufficient to constitute robbery, and the escape exception only applies if force or fear of force was used *only* as a means of escape. *See Merely*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/merely (last visited June 20, 2024) (defining "merely" as "nothing more than: only").

sustains a reasonable theory of guilt, a guilty verdict will not be set aside." *Quist*, 2018 S.D. 30, ¶ 13, 910 N.W.2d at 904 (quoting *Martin*, 2017 S.D. 65, ¶ 6, 903 N.W.2d at 751). A rational trier of fact could have found that Ironheart used his knife with force or fear of force to retain possession of the liquor or to prevent Gergen's resistance to the taking. Finally, the jury could find from this evidence that the force or fear of force was not used solely as a means of escape. Therefore, the circuit court did not err when it denied Ironheart's motion for judgment of acquittal.

[¶17.]       We affirm.

[¶18.]       DEVANEY and MYREN, Justices, concur.

[¶19.]       KERN and SALTER, Justices, concur specially.


SALTER, Justice (concurring specially).

[¶20.]       I join the Court's opinion and write specially to emphasize the correct interpretation of SDCL 22-30-2's "merely as a means of escape" text. In my view, the phrase should be read to mean that the use of force or fear of force will not constitute robbery if it is used *only* in connection with an effort to escape and not for the concurrent purpose of retaining stolen property.

[¶21.]       The element of force is the principal distinguishing element separating robbery from theft or larceny. *Compare* SDCL 22-30A-1 (stating theft requires the exercise of "unauthorized control over[] property"), *with* SDCL 22-30-1 (stating robbery involves the taking of another's property "by means of force or fear of force"). And as noted in the Court's opinion, *supra* note 3, states across the country

have adopted varying formulations of robbery's force element.  *See* Kristine Cordier Karnezis, Annotation, *Use of Force or Intimidation in Retaining Property or in Attempting to Escape, Rather than in Taking Property, as Element of Robbery*, 93 A.L.R.3d 643 (1979).

[¶22.]        For instance, some states regard robbery as the use of force during or prior to actually taking another's property.  *See, e.g.*, *Kemper v. State*, 555 S.E.2d 40, 41 (Ga. Ct. App. 2001) (interpreting Georgia's robbery statute and holding that "[t]he force or intimidation to establish robbery must either precede or be contemporaneous with, and not subsequent to, the taking"); *People v. Foster*, 556 N.E.2d 1214, 1220 (Ill. App. Ct. 1990) (same); *State v. Bateson*, 970 P.2d 1000, 1005 (Kan. 1998) (same).  In these jurisdictions, the absence of force at the point of the theft would preclude the offense of robbery even if force is later used to retain the stolen property or to escape.

[¶23.]        Other states, like ours, have opted for a more transactional view of robbery under which force or the threat of it can constitute robbery when it is used to retain stolen property even though it was not used to take the property initially. *See, e.g.*, *Barkley v. State*, 958 P.2d 1218 (Nev. 1998) (affirming defendant's robbery conviction where he used force only to retain stolen property); *Miller v. Super. Ct.*, 8 Cal. Rptr. 3d 872, 877 (Cal. Ct. App. 2004) (stating that "[c]ircumstances otherwise constituting a mere theft will establish a robbery where the perpetrator peacefully acquires the victim's property, but then uses force to retain or escape with it"); *see also* SDCL 22-30-2 (stating force must be used "either to obtain or *retain* possession of the property" (emphasis added)).

[¶24.]     Whether force used to escape supplies the force element necessary to convert a theft offense to robbery also seems to vary from state to state. But in states like South Dakota, the consideration of force used in an attempt to escape contemplates a narrow inquiry—was the force used *only* as a means of escape, or was it *also* used to retain the stolen property? The latter supplies the force element; the former does not. *See State v. Johnson*, 121 P.3d 91 (Wash. 2005) (concluding defendant's use of force was used only as a means of escape where he abandoned the stolen property before punching a security guard in the nose); *Kernell v. State*, 10 P.2d 287 (Okla. Crim. App. 1932) (reversing defendant's robbery conviction because he used force only as a means of escape). A different rule that did not separate the act of retaining property from merely escaping would create an untenable situation in which the same facts found by the jury could simultaneously establish *and* negate the force element for robbery.

[¶25.]     Viewed in this way, the legislative intent expressed in SDCL 22-30-2 seems particularly suited to address conduct by a pugilistic shoplifter who takes property without force but uses force to retain the property as he leaves the scene. In these instances, a defendant cannot escape liability for robbery by claiming the use of force was incident to escape if the defendant also retained the stolen property.

[¶26.]     This is precisely what occurred here. The evidence established that Ironheart took the liquor bottle without force, but when he was confronted by Gergen, Ironheart threatened to use force to retain the bottle. The fact that he claimed he was also "escaping" is not consequential to the determination of the

robbery elements because he did not abandon the stolen liquor bottle in favor of an undivided effort to escape.

[¶27.] KERN, Justice, joins this writing.