#26819-a-SLZ

**2014 S.D. 36**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

DERRICK SCOTT,                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE WALLY EKLUND
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
BETHANNA FEIST
Assistant Attorneys General
Pierre, South Dakota                    Attorneys for plaintiff
    and appellee.


PAUL E. PIETZ of
Rensch Law Office, PLC
Rapid City, South Dakota                    Attorneys for defendant
    and appellant.

* * * *

ARGUED ON APRIL 30, 2014
OPINION FILED **06/25/14**

#26819

ZINTER, Justice

[¶1.]    A jury found Derrick Scott guilty of aggravated assault. Scott

appealed to this Court, arguing that the State's peremptory strike of a Native

American veniremember violated the Equal Protection Clause as applied in *Batson*

*v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Because the

circuit court did not perform the third step of the *Batson* analysis, we remanded for

the court to perform the missing analysis. *See State v. Scott*, 2013 S.D. 31, ¶¶ 22-

23, 829 N.W.2d 458, 466-67. On remand, the circuit court, with a new judge

presiding, performed the third step and found that the State's peremptory strike

was not based on purposeful racial discrimination. Scott appeals. We affirm.

*Facts and Procedural History*

[¶2.]    During voir dire, Scott challenged the State's peremptory strike of a

Native American veniremember. Scott contended that the State's strike was

racially motivated. *See Scott*, 2013 S.D. 31, ¶ 15, 829 N.W.2d at 465. To refute

Scott's contention, the State explained that it struck the veniremember because it

did not get a "good feeling" from the veniremember's response to a question, and it

believed that the veniremember had been charged with or investigated for criminal

acts involving threatening behavior. *See id.* ¶¶ 15, 17. The circuit court rejected

Scott's challenge, and Scott appealed.

[¶3.]    In Scott's first appeal, we held that the first two steps of *Batson* were

satisfied—Scott established a prima facie case of purposeful racial discrimination,

and the State responded with facially race-neutral justifications for the strike. *See*

*id.* ¶ 17. However, because the third step had not been addressed by the circuit

-1-

court, we remanded.  We directed the court to assess the State's justifications and to determine whether Scott satisfied his burden to prove that the State's peremptory strike was racially motivated.  *See id.* ¶¶ 22-23.  We recognized that the judge who initially presided over Scott's *Batson* challenge had left the bench and could not conduct the remand proceedings.  *See id.* ¶ 24.  Therefore, we remanded for a new judge to determine whether it could perform *Batson's* third step, and if it could, we instructed the judge to enter findings on the matter.  *Id.* ¶ 23.  We further instructed that "[i]f the newly assigned judge determine[d] that insufficient evidence exist[ed] to make the necessary findings, then a new trial must be ordered."  *Id.* ¶ 24.

[¶4.]        During the remand hearing, the State introduced documents corroborating that the veniremember had been charged with making threats.  The documents showed that the charge predated Scott's trial and that the State's attorney who struck the veniremember was the same attorney who had signed the amended complaint.  Scott objected to this evidence.  He argued that because the evidence had not been presented to the original judge, the remand judge could not consider it.  The court overruled Scott's objection.  The remand judge considered the State's corroborating evidence, the transcript of the prior proceeding, and further arguments of counsel.

[¶5.]        The remand court concluded that there was sufficient evidence to find whether the strike was racially motivated.  The court entered a memorandum decision and findings, which found that the State's strike was based on the criminal charge rather than race.

*Decision*

[¶6.]     On appeal, Scott argues that the circuit court erred as a matter of law in determining that sufficient evidence existed to make findings on purposeful racial discrimination. Scott first contends that the remand judge improperly considered documentary evidence regarding the criminal charge against the struck veniremember because that evidence was not presented to the original trial judge. Scott's contention overlooks our instructions in Scott's first appeal.

[¶7.]     In Scott's first appeal, we acknowledged that there would be "practical difficulties" in remanding his *Batson* challenge because a new judge would have to preside. *See id.* ¶ 24. Notwithstanding those difficulties, we remanded for a new judge "to make specific findings on . . . the validity of the State's claim that [the struck veniremember] had been charged with or investigated for criminal behavior." *Id.* ¶ 23. Thus, we contemplated an evidentiary hearing to determine the validity of the State's claim that the struck veniremember had a past criminal charge. Had an evidentiary hearing not been contemplated, there would have been no reason to remand for a new judge to consider the validity of the State's justification. We would have decided the issue on the then-existing record. The circuit court did not err in considering corroborating evidence of the veniremember's past criminal charge.

[¶8.]     Scott next notes that because the remand judge was not present during voir dire, the remand judge was unable to observe and assess the demeanor of the prosecutor when he gave his justifications for the strike. Therefore, Scott contends

that the remand judge was unable to assess the "credibility" of the State's

justifications for striking the veniremember.

[¶9.]        "[T]he critical question in determining whether [Scott] has proved

purposeful discrimination at step three is the persuasiveness of the [State's]

justification for [its] peremptory strike." *See Miller-El v. Cockrell*, 537 U.S. 322,

338-39, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d 931 (2003).  And the persuasiveness of

the State's justification depends heavily on credibility.  *See id.* at 339 ("At [step

three], 'implausible or fantastic justifications may (and probably will) be found to be

pretexts for purposeful discrimination.'  In that instance the issue comes down to

whether the trial court finds the prosecutor's race-neutral explanations to be

credible." (quoting *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L.

Ed. 2d 834 (1995) (per curiam))).

[¶10.]       Thus, the credibility of the State's justifications are at issue, but

credibility is not based solely on the demeanor of the prosecutor when he offered the

justifications.  While "[c]redibility can be measured by, among other factors, the

prosecutor's demeanor[,]" it can also be measured "by how reasonable, or how

improbable, the explanations are[] and by whether the proffered rationale has some

basis in accepted trial strategy." *Id.*; *see also Miller-El v. Dretke*, 545 U.S. 231, 241,

253, 125 S. Ct. 2317, 2325, 2332, 162 L. Ed. 2d 196 (2005) (considering side-by-side

comparisons of black veniremembers who were struck with white veniremembers

allowed to serve; the prosecution's use of jury shuffling; the contrasting questions

asked of minority and nonminority veniremembers; and the widely known policy of

the prosecution's office to exclude minority veniremembers).  Scott's argument fails

because it does not recognize that the prosecutor's demeanor was only one factor, among many, to consider in determining whether the justifications for the strike were credible.[1]

[¶11.]     In this case, the remand judge considered highly probative non-demeanor evidence that corroborated one of the State's race-neutral justifications for the strike. The State introduced documentary evidence consistent with its claim that it struck the veniremember because of a recent criminal charge against her, not because of her race. That evidence, an amended complaint and police report, also established that the State would have had knowledge of the charge when it exercised its strike.

[¶12.]     The remand judge also noted that the record reflected that of the three Native American veniremembers, one was struck by the State, one was struck by the defense, and the other served on the jury. We acknowledge that "[a] pattern of striking Native Americans is not required for a finding that the State was motivated by purposeful discrimination[.]" *Scott,* 2013 S.D. 31, ¶ 21, 829 N.W.2d at

---

1.     We recognize that demeanor will often be "the best evidence" bearing on the credibility of the State's facially race-neutral justification for its peremptory strike. *See Thaler v. Haynes,* 559 U.S. 43, 49, 130 S. Ct. 1171, 1175, 175 L. Ed. 2d 1003 (2010) (per curiam) ("[T]he best evidence of the intent of the attorney exercising a strike is often that attorney's demeanor." (citing *Snyder v. Louisiana,* 552 U.S. 472, 477, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008))); *Hernandez v. New York,* 500 U.S. 352, 365, 111 S. Ct. 1859, 1869, 114 L. Ed. 2d 395 (1991) (plurality opinion) ("In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge."). However, as this case demonstrates, best evidence does not mean only evidence. The remand judge in this case considered other evidence that was highly probative in the discriminatory motive and pretext inquiry.

466 (citing *United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir. 1989)). But just as "a 'pattern' of strikes against [minority] jurors included in the particular venire might give rise to an inference of discrimination[,]" *see Batson*, 476 U.S. at 97, 106 S. Ct. at 1723, a lack of a pattern may support the opposite inference. Thus, pattern evidence is not categorically barred from consideration under *Batson's* third step.

[¶13.] A court must consider a "wide variety of evidence" in determining whether the opponent of a peremptory strike established a prima facie case of purposeful racial discrimination. *See Johnson v. California*, 545 U.S. 162, 169, 125 S. Ct. 2410, 2416, 162 L. Ed. 2d 129 (2005); *see also Batson*, 476 U.S. at 94, 96, 106 S. Ct. at 1721, 1723. A court must also consider a wide variety of evidence in determining whether the opponent carried his ultimate burden to prove purposeful racial discrimination. Considering the voir dire and post-voir dire evidence in this record, the circuit court did not err in concluding that sufficient evidence existed to make a finding regarding purposeful racial discrimination.

[¶14.] Scott, however, also argues that the remand court erred in finding that the State's peremptory strike was not racially motivated. *Batson* established a three-step process for evaluating whether a peremptory strike was racially motivated.

> First, the defendant must make out a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second, once the defendant has made out a prima facie case, the burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes. Third, [i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.

*State v. Guthmiller*, 2014 S.D. 7, ¶ 12, 843 N.W.2d 364, 368 (alterations in original) (quoting *Scott*, 2013 S.D. 31, ¶ 16, 829 N.W.2d at 465-66 (quoting *Johnson*, 545 U.S. at 168, 125 S. Ct. at 2416)).

[¶15.]     In Scott's first appeal, we held that the first two steps of *Batson* were satisfied. *See Scott*, 2013 S.D. 31, ¶ 17, 829 N.W.2d at 466. However, because the circuit court did not perform the third step of *Batson*, we remanded so the court could "assess the veracity of the State's race-neutral reasons and determine whether Scott met his burden of proving purposeful discrimination." *See id.* ¶¶ 21-23.

[¶16.]     On remand, the judge found that the State's peremptory strike was not based on purposeful racial discrimination. Usually, we review such a finding for clear error. *See, e.g.*, *Guthmiller*, 2014 S.D. 7, ¶ 11 n.2, 843 N.W.2d at 368 n.2. We normally afford great deference to a circuit court's finding on purposeful racial discrimination because race-neutral reasons for peremptory strikes often involve issues of demeanor, and the circuit court is specially positioned to make firsthand observations that we are unable to review on appeal. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1208; *Cockrell*, 537 U.S. at 339-40, 123 S. Ct. at 1041. Therefore, "in the absence of exceptional circumstances," we defer to the circuit court. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1208 (quoting *Hernandez*, 500 U.S. at 366, 111 S. Ct. at 1870 (plurality opinion)). This case, however, involves exceptional circumstances.

[¶17.]     Here, the trial court's usual advantage in assessing demeanor through firsthand observations is not present because the judge who observed the

veniremembers and the State's attorney during voir dire could not preside over the remand proceedings. Further, the remand judge was in no better position than this Court to review the supplementary documentary evidence bearing on credibility. Accordingly, we review this case de novo, keeping in mind "that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768, 115 S. Ct. at 1771 (per curiam) (citation omitted).

[¶18.] In this case, the totality of the relevant evidence supports the State's assertion that its peremptory strike was not racially motivated. During the original *Batson* hearing, the State justified its strike by claiming that the veniremember had recently been charged with a crime involving threatening conduct. On remand, the State produced documentary evidence supporting that claim. Legitimate, nonracial trial strategy supported striking such a juror.

[¶19.] Scott, however, argues that the circuit court erred in conducting the third step of *Batson* because it did not consider the factors addressed in *State v. Cannon*, 41 P.3d 1153 (Utah Ct. App. 2002). Scott contends that, if considered, those factors indicate that the State's justifications were pretextual.[2]

[¶20.] Relying on *Cannon,* Scott first asserts that the State's failure to show, or ask questions tending to show, that the struck veniremember was biased against the State indicates pretext. Scott's assertion is misplaced. A showing of bias justifies a challenge for cause. *See* SDCL 23A-20-13.1(12) ("Challenges for cause

---

2. While this and other courts have identified factors that may be helpful in determining pretext, this Court has never ruled that certain factors must be considered.

may be taken on [the ground that] . . . [t]he prospective juror has a state of mind evincing . . . bias to or against an attorney, . . . [or] the prosecution . . . ."). But the State's race-neutral justification for exercising a peremptory strike "need not rise to the level justifying exercise of a challenge for cause." *See Batson*, 476 U.S. at 97, 106 S. Ct. at 1723 (citations omitted). Therefore, the State was not required to question the struck veniremember for actual bias.

[¶21.]       Scott next asserts that a comparison of the struck veniremember with a veniremember seated on the jury indicates pretext. Scott contends that a non-Native American veniremember, who was seated on the jury, was comparable to the struck veniremember because the seated juror had been convicted of a crime. A side-by-side comparison of struck and seated veniremembers "is an important factor in determining whether peremptory challenges are discriminatory[.]" *State v. Martin*, 2004 S.D. 82, ¶ 16, 683 N.W.2d 399, 404; *see also Dretke*, 545 U.S. at 241, 125 S. Ct. at 2325 ("If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step."). "[H]owever, it is not determinative[.]" *Martin*, 2004 S.D. 82, ¶ 16, 683 N.W.2d at 404.

[¶22.]       Here, a side-by-side comparison offers limited guidance. The State established that the struck veniremember had recently been charged with a crime involving threatening conduct, and significantly, that veniremember had been charged by the same attorney who was prosecuting Scott's case. In contrast, Scott did not establish the seated juror's offense, when he was convicted, or who

prosecuted his case. Without a better record of similarities, this comparison must be viewed with caution. *See Snyder*, 552 U.S. at 483, 128 S. Ct. at 1211 ("[A] retrospective comparison of jurors based on a cold appellate record may be very misleading when alleged similarities were not raised at trial. In that situation, an appellate court must be mindful that an exploration of the alleged similarities at the time of trial might have shown that the jurors in question were not really comparable."). Scott's comparison also fails to acknowledge the other evidence that corroborated the State's criminal-charge justification, lessening the need to evaluate side-by-side comparisons. *Cf. State v. Mulligan*, 2007 S.D. 67, ¶ 38, 736 N.W.2d 808, 821 (noting that the opponent's comparison argument "fail[ed] to acknowledge that the other reasons stated for striking [veniremembers] were sufficient to sustain the trial court's finding that there was no pretext"). We do not find Scott's side-by-side comparison determinative.

[¶23.] Scott next asserts that the State's questioning during voir dire indicated pretext. Scott contends that the State performed only a "perfunctory examination" of the struck veniremember and that the questioning was designed to single out the veniremember to evoke a certain response. Reviewing the State's questioning, like reviewing side-by-side comparisons, offers little guidance in this case. The record reflects that the questioning of all veniremembers was brief, limited, and somewhat "perfunctory." Moreover, the question asked of the struck veniremember was also asked of a non-Native American veniremember who was struck by the State. While contrasting questions asked of different veniremembers is a factor to consider, *see Dretke*, 545 U.S. at 255, 125 S. Ct. at 2333, the record in

this case does not suggest that the State's questioning was designed to mask a racially motivated purpose.

[¶24.]    Scott finally argues that the remand court erred because it did not address the State's other justification for striking the veniremember. At the original *Batson* hearing, the State's other justification was that it did not get a "good feeling" from the struck veniremember's response to a question. A justification based solely on a "feeling" may suggest pretext. Were that the State's only justification, it may have been unacceptable, as some courts have concluded for similar justifications. *See generally* Wayne R. LaFave et al., 6 Crim. Proc. § 22.3(d) (3d ed. 2013) ("[A] reason which is grounded largely in speculation, hunch, or other subjective reaction rather than upon facts is not likely to be deemed acceptable, although there are cases in which such reasons have been found sufficient."). But we need not consider that question in this case because the State presented other evidence that strongly supported its assertion that its strike was not racially motivated. *Cf. Mulligan*, 2007 S.D. 67, ¶ 38, 736 N.W.2d at 821.

[¶25.]    Scott, however, further argues that the remand court erred in considering the State's post-hoc explanations connected to its "feeling" justification. On remand, the State elaborated on its feeling justification, explaining that its feeling was based not only on the veniremember's response to a question, but also on what the State "perceived as [the veniremember's] lack of interest in the process, along with concerns as to whether she was paying attention." Such post-hoc explanations are suspect and must be viewed with caution. That is especially true in this case because these explanations were based largely on the veniremember's

demeanor, a characteristic that was not reviewable by the remand judge or this Court. Therefore, in our de novo review, we decline to consider the State's post-hoc explanations regarding the veniremember's level of interest and attention.

[¶26.]     *Batson* prohibits a peremptory strike based "solely on account of [a veniremember's] race[.]" *See* 476 U.S. at 89, 106 S. Ct. at 1719. In this case, the totality of the relevant evidence indicates that the State's peremptory strike was based on the veniremember's criminal charge for conduct involving threatening behavior. Based on our de novo review, we agree with the remand court that Scott failed to carry his burden of proving purposeful racial discrimination.

[¶27.]     Affirmed.

[¶28.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.